UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| BRUCE PARKS, JR., | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 1:22-cv-309 |
| WARDEN COBBLE, SGT. JOHNSON, SGT. WINN, SGT. PETERS, SGT. MACE, and UNIT MANAGER SIEMS, | ) | Judge Atchley |
| | ) | Magistrate Judge Lee |
| Defendants. | ) | |

## MEMORANDUM & ORDER

Plaintiff, a prisoner in the Tennessee Department of Correction ("TDOC") housed in the Bledsoe County Correctional Complex ("BCCX"), has filed an amended pro se complaint under 42 U.S.C. § 1983 [Doc. 8], and two motions for leave to proceed *in forma pauperis* [Docs. 5 and 7]. For the reasons set forth below, the Court will **GRANT** Plaintiff's latest motion for leave to proceed to *in forma pauperis* [Doc. 7], **DENY** Plaintiff's first motion to proceed *in forma pauperis* as moot [Doc. 5], permit Plaintiff's claim of excessive force to proceed against Sgt. Peters, and **DISMISS** all remaining claims and Defendants.

### I. MOTIONS FOR LEAVE TO PROCEED *IN FORMA PAUPERIS*

It appears from Plaintiff's latest motion for leave to proceed *in forma pauperis* [Doc. 7] that he is unable to pay the filing fee. Accordingly, pursuant to 28 U.S.C. § 1915, this motion [*Id.*] will be **GRANTED**. Plaintiff's initial motion for leave to proceed *in forma pauperis* [Doc. 5] will be **DENIED** as moot.

As he is incarcerated, Plaintiff will be **ASSESSED** the $350.00 civil filing fee. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, United

States District Court, 900 Georgia Avenue, Chattanooga, Tennessee 37402, twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to his trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) as authorized under 28 U.S.C. § 1914(a) has been paid to the Clerk. 28 U.S.C. § 1915(b)(2).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to provide a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy. This Order shall be placed in Plaintiff's file and follow him if he is transferred to another correctional institution.

## II. SCREENING OF AMENDED COMPLAINT

### A. Standard

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or are against a defendant who is immune. *See, e.g.,* 28 U.S.C. §§ 1915(e)(2)(B) and 1915A; *Benson v. O'Brian*, 179 F.3d 1014 (6th Cir. 1999). The dismissal standard that the Supreme Court set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

Courts liberally construe pro se pleadings and hold them to a less stringent standard than lawyer-drafted pleadings. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Even so, formulaic and conclusory recitations of the elements of a claim do not state a plausible claim for relief. *Iqbal*, 556 U.S. at 681. Likewise, an allegation that does not raise a plaintiff's right to relief "above a speculative level" fails to state a plausible claim. *Twombly*, 550 U.S. at 570.

B.   **Plaintiff's Allegations**

On November 4, 2021, Plaintiff was transferred from Northeast Correctional Complex ("NECX") to BCCX and placed in a segregation unit "under harsh condition[]s" such as being limited to two phone calls per week, lack of access to the legal library, 3 showers per week, being handcuffed upon leaving one's cell, "not being able to stay groom[ed]," and "being mistreated by staff" [Doc. 8 p. 4]. Plaintiff maintains that Defendant Cobble, a BCCX associate warden responsible for the operation of the facility, and Unit Manager Nicole Siems informed Plaintiff that he was placed in segregation at BCCX because he belonged to a Security Threat Group ("STG"), and that no other prison would take him due to his "write up" history [*Id.*].

On November 10, 2022, Plaintiff was moved to a "transient unit" where he allegedly "should have be[en] all along" [*Id.*]. Had he not been in segregation, he maintains, the events giving rise to this lawsuit would not have occurred [*Id.*].

On June 3, 2022, Sgts. Johnson and Winn found Plaintiff guilty of incident # 1535011, and Plaintiff was not provided an incident report in accordance with TDOC policy until twenty-eight days after the fact [*Id.*].

On November 16, 2022, Sgt. Winn found Plaintiff guilty of incident #1558112, which involved the presence of medication in Plaintiff's cell [*Id.* at 5]. Plaintiff maintains that it was

3

prescribed medication and not illegitimate drug possession, but that he was nonetheless improperly found guilty [*Id*.].

On December 12, 2022, Sgt. Johnson found Plaintiff guilty in incident #1558551, and Plaintiff was written up for property violation under the reasoning that the serial number of the television in Plaintiff's cell did not match what was in the system, even though Plaintiff produced proof of ownership [*Id*. at 5]. Plaintiff was subsequently informed that the conviction was dismissed after Plaintiff's mother sent email proof [*Id*.].

Plaintiff maintains that he was harassed and threatened by a non-defendant correctional officer on December 13, 2022, and that officer ultimately called Sgt. Peters for assistance [*Id*. at 5]. Plaintiff contends that Sgt. Peters and another officer entered Plaintiff's cell and threatened him against speaking to or about Officer Spunuzzi, or else "it wouldn't be pretty" [*Id*.]. On December 26, 2022, Plaintiff was walking from chow, and Sgt. Peters pulled him out of line and asked if he recalled their earlier conversation [*Id*.]. Plaintiff responded "no" and asked if he could go since "there's nothing to talk about" [*Id*.]. Plaintiff filled out grievances on "both incidents" and submitted them on December 21, 2022 [*Id*.].

On December 31, 2022, while Officer Spunuzzi and Officer Mooneyham were working the unit, Plaintiff placed a towel on his cell window to use the bathroom [*Id*. at 6]. "[O]ut of nowhere" Sgt. Peters and three or four other officers entered Plaintiff's cell with a tazer pointed at Plaintiff [*Id*.]. Plaintiff was ordered to sit on his bunk, Plaintiff raised his hands and asked what he had done, and Sgt. Peters "forcefully choke[d]" Plaintiff, stood him up, and handcuffed him by "turning his arms 360" degrees [*Id*.]. Plaintiff asked if his property could be packed in his presence, and Sgt. Peters responded that Plaintiff property was "f***" [*Id*. at 6]. While packing

4

up Plaintiff's personal property, a non-defendant officer broke Plaintiff's television remote in half and threw his television on the ground [*Id*. at 8].

Plaintiff was taken to Unit 21-B and placed in a shower[1], where he explained the situation to a nurse and Sgt. Clark [*Id*. at 6]. Plaintiff's requests for photographs and an incident report were denied [*Id*.]. Second shift personnel advised Plaintiff to make an emergency grievance, which he did, but the grievance was returned because it was not an emergency matter [*Id*.]. Plaintiff informed officers that he was in fear of his safety and requested protective custody, but "nothing was done" [*Id*.].

Once more housed in segregation, Plaintiff was advised that he did not have any hygiene items in his property [*Id*.]. Plaintiff maintains that numerous officials are aware that he is being housed without his hygiene products as punishment for Plaintiff stating that Sgt. Peters violated his constitutional rights [*Id*. at 6]. Specifically, Plaintiff maintains that Unit Manager Nicole Siems, who is responsible for the operation of the unit, knows of Plaintiff's condition and ignores it "out of hatefulness" [*Id*.]. On January 5, 2023, Plaintiff called a hotline to report these conditions [*Id*. at 6-7].

Plaintiff contends that Defendant Sgt. Mace is the grievance chairman, and that he purposefully prohibited Plaintiff from filing a number of grievances and/or returning them as inappropriate [*Id*. at 7].

Aggrieved of these incidents, Plaintiff seeks monetary damages and an injunction removing Sgt. Mace as grievance chairperson [*Id*. at 9].

**C.  Analysis**

   **1.  Res Judicata**

---

[1] Plaintiff does not allege that he was tazed during the incident, but his statement that he was placed in a shower afterwards suggests that he might have been.

The doctrine of res judicata prevents "the parties and their privies from relitigating in a subsequent proceeding a controversy or issue already decided by a prior valid judgment and from litigating piecemeal the same controversy." *Westwood Chem. Co., Inc. v. Kulick*, 656 F.2d 1224, 1229 (6th Cir. 1981). The doctrine consists of two related concepts: claim preclusion and issue preclusion. *Gargallo v. Merrill Lynch, Pierce, Fenner & Smith, Inc*., 918 F.2d 658, 660 (6th Cir. 1990); *Taylor v. Reynolds*, 22 F. App'x 537, 538-39 (6th Cir. 2001).

Under claim preclusion, "a final judgment on the merits in an action precludes a party from bringing a subsequent lawsuit on the same claim or cause of action or raising a new defense to defeat a prior judgment. It precludes not only relitigating a claim or cause of action previously adjudicated, it also precludes litigating a claim or defense that should have been raised, but was not, in a claim or cause of action previously adjudicated." *Gargallo*, 918 F.2d at 660-61 (internal citation and citation omitted). "Under issue preclusion, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving any party to the prior litigation." *Taylor*, 22 F. App'x at 538-39 (citing *Montana v. United States*, 440 U.S. 147, 153-54 (1979)).

In his prior suit filed February 18, 2022, Plaintiff complained, among other things, of his placement (and conditions) in a segregation unit upon his transfer to BCCX [*See, generally*, Doc. 2 in No. 1:22-cv-41]. That action was dismissed for Plaintiff's failure to state a claim upon which relief might be granted [*See* Docs. 5 and 6 in No. 1:22-cv-41]. Plaintiff again complains of his year-long placement in segregation in this lawsuit [Doc. 8 p. 4]. However, because this Court has already rejected Plaintiff's claims related to his placement in segregation upon transfer to BCCX, the Court finds that the doctrine of res judicata precludes Plaintiff from relitigating them here. *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3 (1981) (noting that dismissal for

6
Case 1:22-cv-00309-CEA-SKL   Document 10   Filed 02/02/23   Page 6 of 15   PageID #: 60

failure to state a claim upon which relief may be granted qualifies as a decision on the merits); *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (holding party cannot relitigate essential issues that were actually adjudicated in a prior case involving a party to that case). Accordingly, any claims related to Plaintiff's placement in segregation and/or the conditions he faced in segregation upon his transfer to BCCX will be dismissed.

### 2. Warden Cobble

Plaintiff seeks to hold Defendant Cobble liable in this action because he is responsible for operating BCCX and ensuring that TDOC policy is followed [*See* Doc. 8 p. 4]. However, a claim against Defendant Cobble based on his position as Warden fails to state a claim upon which relief may be granted under § 1983. *Iqbal*, 556 U.S. at 676 (noting that "our precedents establish . . . that Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior"); *see also Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim under § 1983).

The Court otherwise notes that even if Plaintiff alleged sufficient facts to suggest that Warden Cobble is personally involved in ignoring the enforcement of TDOC policy, such allegations might suggest professional misconduct, but they do not raise an inference of constitutional misconduct. This is because TDOC policies do not create a protectable liberty interest, and therefore, failing to follow those policies does not raise an issue of constitutional significance. *Laney v. Farley*, 501 F.3d 577, 581 n. 2 (6th Cir. 2007); *McVeigh v. Bartlett*, No. 94-23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (finding failure to follow policy directive does not rise to the level of a constitutional violation because policy directives do not create a protectible liberty interest). Accordingly, neither Defendant Cobble, nor any other

7

Case 1:22-cv-00309-CEA-SKL   Document 10   Filed 02/02/23   Page 7 of 15   PageID #: 61

Defendant, may be held liable in a § 1983 action for failing to follow TDOC policy. Accordingly, Defendant Cobble and any claims related to the failure to follow TDOC policy will be dismissed.

### 3. Disciplinary Infractions/Hearings

Plaintiff next asserts that Defendants Sgts. Johnson and Winn violated disciplinary hearing procedures and improperly found him guilty of disciplinary offenses [Doc. 8 p. 4-5].

In a prison disciplinary proceeding, a prisoner does not have "the full panoply of rights due a defendant" in a criminal prosecution. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citation omitted). Rather, a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence" or imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 486-87 (1995); *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998). Plaintiff does not allege that his placement in segregation affected the duration of his sentence, and his mere placement in segregated confinement does not trigger due process protections. *Sandin*, 515 U.S. at 486–87 (1995); *McMann v. Gundy*, 39 F. App'x 208, 209-10 (6th Cir. 2002) (finding five-month placement in administrative segregation without a hearing did not implicate due process rights).

Further, any failure by Defendants to comply with prison regulations in conducting Plaintiff's disciplinary hearing does not raise a constitutional issue, as mandatory language in prison regulations does not create a liberty interest protected by the Due Process Clause. *Rimmer-Bey v. Brown*, 62 F.3d 789, 790-91 (6th Cir. 1995).

As to Plaintiff's allegation of false disciplinary infractions, the Court notes that inmates possess no right to be free from charges or convictions of prison disciplinary offenses. *Wolff*, 418 U.S. at 564-71. This is true even if the charge later turns out to be unfounded. *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004) ("False accusations of misconduct filed against

an inmate do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing."); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitution a constitutional violation redressable under § 1983."). Accordingly, Plaintiff has failed to state a cognizable § 1983 claim related to his allegations concerning disciplinary infractions and/or hearings, and all such claims will be dismissed.

### 4. Threats

Plaintiff maintains that he was threatened and harassed at BCCX by various Defendants and non-defendant officers [*See, e.g.,* Doc. 8 p. 5-6]. However, verbal harassment or threats by prison officials toward an inmate do not constitute punishment within the meaning of the Eighth Amendment. *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir.1987); *Faulkner v. Davidson Cnty. Sheriff's Off.*, No. 3:14-MC-00740, 2014 WL 3723205, at *2 (M.D. Tenn. July 24, 2014) ("Allegations of threats and verbal abuse do not state cognizable claims under § 1983.")

Thus, Plaintiff's allegations that Defendants have harassed and threatened him, although reflective of unprofessional conduct, do not state a claim of constitutional dimensions. *See Ivey*, 832 F.2d at 954-55. Accordingly, these claims will be dismissed.

### 5. Personal Property

Plaintiff maintains that his personal property was confiscated, his television remote (and possibly his television) broken, and that he has been denied access to hygiene products [Doc. 8 p. 6, 8]. As discussed below, these allegations implicate three different constitutional issues.

#### a. Deprivation of property

The Court first considers whether Plaintiff has stated a claim by alleging that officers confiscated his property and either broke it or failed to return it. The United States Supreme Court

9

has held that the Due Process Clause of the Fourteenth Amendment is not violated when a State employee randomly deprives an individual of property, provided that the State makes available a meaningful post-deprivation remedy. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *see also Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (extending *Parratt*'s holding to intentional deprivations of property). Plaintiff has not pled that Tennessee's post-deprivation procedures are inadequate for redressing the alleged wrong as is necessary to sustain his § 1983 claim. *See Vicory v. Walton*, 721 F.2d 1062, 1063 (6th Cir. 1983). Additionally, the Court notes that Tennessee law provides for the recovery of personal property. *See McQuiston v. Ward*, No. 2001-201-COA-R3-CV, 2001 WL 839037, at * 1 (Tenn. Ct. App. July 25, 2001) (citing to Tenn. Code. Ann. § 29-30-101 and § 29-30-201). Plaintiff has not shown that these State remedies are inadequate, and therefore, he has not stated a claim that would entitle him to relief under § 1983 for the loss of his personal property.

        **b.**     **Conditions of confinement**

Next, Plaintiff alleges that he has been denied his personal hygiene items [*See* Doc. 8 p. 6]. It is well settled that "the unnecessary and wanton infliction of pain," inflicted with "deliberate indifference" to an inmate's health or safety, violates the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 320 (1986); *Hudson v. McMillan*, 503 U.S. 1, 8 (1992). A prison official acts with deliberate indifference when the official knows of and disregards an excessive risk to inmate health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). This standard applies to prison conditions, as well as to prisoner punishments. *See Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).

However, "[t]he Constitution does not mandate comfortable prisons." *Id.* at 349. Rather, "routine discomfort is part of the penalty that criminal offenders pay for their offenses against

10

society," and as such, only "extreme deprivations" that deny a prisoner "the minimal civilized measure of life's necessities" will establish a claim. *Hudson*, 503 U.S. at 8-9 (citations and internal quotation marks omitted). A short-term deprivation of hygiene items does not deprive an inmate of "the minimalized civil measure of life's necessities." *See Rhodes*, 452 U.S. at 347; *see also Miller v. Palmer*, No. 99-2352, 2000 WL 1478357, at *2 (6th Cir. Sept. 27, 2000) (holding denial of clean linens for a short period of time does not constitute Eighth Amendment violation); *Williams v. Delo*, 49 F.3d 442 (8th Cir. 1995) (holding four-day inmate placement in strip cell without clothes, water, mattress, legal mail, or hygienic supplies did not violate Eighth Amendment).

Here, Plaintiff does not indicate what particular hygiene items he has been denied, nor does he state that he has been denied access to all hygiene items. Rather, he complains that he has not been permitted access to "his hygiene" items that were in the personal property confiscated by officers [Doc. 8 p. 6]. Additionally, he does not complain of any associated health issues or injuries as a result of not having adequate access to hygiene items. Therefore, he has not alleged facts to permit the Court to plausibly infer that he has been denied any basic human need, and these these allegations fail to state a claim upon which relief may be granted. *See, e.g., Moore v. Chavez*, 36 F. App'x 169, 171 (6th Cir. 2002) (holding inmate who failed to allege "extreme discomfort" or complete denial of "basic elements of hygiene" did not state Eighth Amendment claim).

        **c.**     **Retaliation**

Plaintiff also maintains that his personal property was taken to punish him for complaining about Sgt. Peter's conduct, and that Unit Manager Nicole knew of and ignored Plaintiff's plight out of "hatefulness" [Doc. 8 p. 6]. These allegations, liberally construed, attempt to allege a retaliation claim. Such a claim requires Plaintiff to demonstrate that (1) he "engaged in protected

11

conduct; (2) an adverse action was taken against [him] that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).

Even assuming Plaintiff was placed in segregation because he complained about Sgt. Peters, and that such an act is substantial enough to deter a person of ordinary firmness from continuing to file grievances, he has not identified facts from which the Court could infer that any named Defendant acted with a retaliatory motive. *See Hill v. Lappin*, 630 F.3d 468, 475 (6th Cir. 2010) ("[C]onclusory allegations of [a] retaliatory motive unsupported by material facts will not be sufficient to state a . . . claim" under § 1983); *see also Cantley v. Armstrong*, 391 F. App'x 505, 507 (6th Cir. 2010) (quoting *Lewis v. Jarvie*, 20 F. App'x 457, 459 (6th Cir. 2001) (affirming district court's holding that a prisoner's complaint was insufficient to demonstrate a causal relationship between protected activity and adverse action because "'bare allegations of malice on the defendants' parts are not enough to establish retaliation claims' that will survive § 1915A screening"). Additionally, Plaintiff has not alleged that Unit Manager Siems was the individual who ordered Plaintiff placed in segregation, or that she took any action against Plaintiff to ensure that he was placed in segregation. Therefore, Plaintiff's allegations will not sustain a claim of retaliation, and this claim will be dismissed.

### 6. Grievances

Plaintiff contends that Defendants, and especially Sgt. Mace, have interfered with his ability to file and successfully resolve grievances [*See, generally*, Doc. 8 p. 4-7]. Such an allegation fails to state a claim, however, as inmates have no constitutional right to a grievance procedure, and they therefore have no interest in having any such grievances satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001)

(citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Further, Defendant Mace cannot be held liable for failing to provide Plaintiff with a remedy through the grievance procedure, as "[t]he 'denial of administrative grievances or the failure to act' by prison officials does not subject supervisors to liability under § 1983." *Grinter v. Knight,* 532 F.3d 567, 576 (6th Cir. 2008) (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Accordingly, Plaintiff's allegations regarding his grievances and/or the grievance procedure fail to state a § 1983 claim, and they will be dismissed.

### 7. Excessive Force

Finally, Plaintiff maintains that Sgt. Peters choked him and handcuffed him in an uncomfortable manner without cause [Doc. 8 p. 6]. In determining whether a prison official's conduct violates the Eighth Amendment's prohibition against excessive force, courts apply a two-part inquiry: (1) "whether force was applied in a good faith effort to maintain and restore discipline or maliciously and sadistically for the very purpose of causing harm," i.e., the subjective component; and (2) whether the conduct, in context, is sufficient serious to offend "contemporary standards of decency," i.e., the objective component. *Hudson*, 503 U.S. at 6, 9.

The subjective competent requires consideration of the need for the use of force, the relationship between that need and the force used, the threat reasonably perceived by the official, and the extent of the injury. *Hudson*, 503 U.S. at 7. To satisfy the objective component, an inmate need not prove a serious injury to prove cruel and unusual treatment, but the extent of the injury may be probative of whether the force was plausibly "thought necessary" in the situation. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). However, "not every malevolent touch by a prison guard" creates a federal claim, and *de minimis* uses of physical force that are not repugnant to the conscience of mankind do not violate the Eighth Amendment. *Id*. (quoting *Hudson*, 503 U.S. at 9).

13

Here, Plaintiff alleges facts indicating that officers entered his cell because he was in violation of facility rules — he had a towel covering his window [Doc. 8 p. 6]. However, he also alleges that he was compliant with commands once the officers entered, and that he was choked and roughly handcuffed by Sgt. Peters despite his nonresistance [*Id*.]. Therefore, making all reasonable inferences in Plaintiff's favor at this stage of the litigation, the Court finds Plaintiff has stated a plausible claim of excessive force against Defendant Sgt. Peters.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's latest-filed motion for leave to proceed *in forma pauperis* [Doc. 7] is **GRANTED**, and Plaintiff's initial motion [Doc. 5] **DENIED** as moot;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to mail a copy of this Memorandum and Order to the custodian of inmate accounts at the institution where Plaintiff is now confined and to the Court's financial deputy;

5. Plaintiff has stated a plausible excessive force claim against Sgt. Peters, and this claim will **PROCEED**;

6. The Clerk is hereby **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Sgt. Peters;

7. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this Memorandum and Order. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service pursuant to Fed. R. Civ. P. 4;

8. Plaintiff is **NOTIFIED** that failure to return the completed service packet within the time required will result in dismissal of this action for want of prosecution and/or failure to follow Court orders;

9. Defendant shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant fails to timely respond to the complaint, any such failure may result in entry of judgment by default;

10. All remaining claims and Defendants are **DISMISSED**; and

11. Plaintiff is **ORDERED** to immediately inform the Court and Defendant or his counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

/s/     *Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY JR.**
**UNITED STATES DISTRICT JUDGE**